**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**DONNIE CHUNN**                                                                                      **PLAINTIFF**

**VERSUS**                                       **CIVIL ACTION NO. 3:18-cv-720-TSL-MTP**

**COMMISSIONER OF US SOCIAL SECURITY ADMINISTRATION,**
*Nancy A. Berryhill*                                                              **DEFENDANT**

### REPORT AND RECOMMENDATION

Plaintiff Donnie Chunn brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security denying him disability insurance benefits and supplemental security income. Having reviewed the parties' submissions, the record, and the applicable law, the undersigned recommends dismissing this action with prejudice.

### PROCEDURAL HISTORY

Plaintiff filed for disability insurance benefits and supplemental security income on August 13, 2015. Admin. R. [9] at 187, 191. After the agency denied Plaintiff's application, a hearing was held before an Administrative Law Judge ("ALJ") on August 16, 2017. *Id*. at 35. The ALJ considered Plaintiff's severe impairments of left-eye blindness, depression, anxiety, polysubstance abuse,[1] personality disorder, right shoulder and right knee dysfunction along with his non-severe impairments of panic and insomnia. *Id*. at 22. The ALJ issued an opinion finding that Plaintiff was not disabled and not entitled to benefits. *Id*. at 28. Plaintiff then requested review of the ALJ's opinion, but the Appeals Council denied review. *Id*. at 5-7. This appeal followed.

---

[1] Plaintiff testified at the hearing that he was not using drugs at that time but had used methamphetamine every other day until December 2016. Admin. R. [9] at 39. At a consultative exam, Plaintiff denied having drug problems. *Id*. at 440.

1

**ADMINISTRATIVE LAW JUDGE'S DECISION**

In his opinion, the ALJ applied the five-step analysis found in 20 C.F.R. § 404.1520(b)-(g)[2] and found that Plaintiff was not disabled according to the Social Security Administration ("SSA") definition. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2011. *Id.* at 22.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: left-eye blindness, depression, anxiety, polysubstance abuse, personality disorder, and right shoulder and right knee dysfunction. *Id.* These impairments were found to significantly limit Plaintiff's ability to perform basic work activities. *Id.* The ALJ noted that Plaintiff also suffered from panic and insomnia, but these impairments were not found to be severe. *Id.*

At step three, the ALJ found that Plaintiff's impairments did not meet the requirements of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ considered Listing 1.02 (major dysfunction of a joint), Listing 2.04 (loss of visual efficiency in the better

---

[2] This analysis requires the ALJ to make the following determinations:
(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);
(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);
(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);
(4) whether the impairment prevents the claimant from doing past relevant work (if not, a finding of "not disabled" is made);
(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The burden of proof rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining her burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

eye), and Listings 12.04, 12.06, and 12.08 (mental impairments) but found that the medical records did not demonstrate that these Listings were met. *Id*. at 22-23.

The ALJ then considered Plaintiff's residual functional capacity ("RFC") and found that Plaintiff could perform light work as defined by 20 C.F.R. § 404.1567(b) and 416.967(b). *Id*. at 23. Plaintiff, however, could only understand, remember and carry out simple instructions and routine tasks. He could concentrate for two-hour periods. Additionally, Plaintiff could occasionally interact and cooperate with the general public, but he could not have ten or more people in his work space. *Id*. at 23-24. The ALJ also found that Plaintiff was physically limited in several ways. For example, he could not work around heights, dangerous machinery, on ladders, or perform commercial driving— among other physical restrictions. *See id*. at 24.

At step four, the ALJ found that Plaintiff could perform his past-relevant work as a cleaner. *Id*. at 28. A vocational expert testified at the hearing that an individual of Plaintiff's age, education, past work, and residual functional capacity could perform the work of a cleaner, which is light and unskilled. *Id*. The ALJ did not proceed to step five, concluding that Plaintiff was not under a disability through the date of his decision. *Id.*

## STANDARD OF REVIEW

This Court will only review the Commissioner's denial of benefits to determine whether "(1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner's decision must be affirmed when there is substantial evidence to support the findings. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Ripley v.*

*Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (internal quotations omitted).  Conflicts in evidence are the purview of the Commissioner and are not for the Court to resolve or review de novo.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  "Procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected."  *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (internal quotations and citation omitted).

## ANALYSIS

Plaintiff raises three issues on appeal: (1) did the ALJ properly evaluate medical opinion evidence in determining Plaintiff's RFC; (2) did the ALJ properly consider Plaintiff's mental impairments; (3) did the ALJ properly incorporate Plaintiff's mental limitations into his hypothetical questioning of the vocational expert?

### *Did the ALJ properly evaluate medical opinion evidence in determining Plaintiff's RFC?*

In his opinion, the ALJ examined the medical opinions of record and formed Plaintiff's RFC.  The ALJ wrote that "the [Plaintiff's] medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  Admin. R. [9] at 25.

Plaintiff disagrees with this analysis and submits that the ALJ did not consider the opinions of the state medical consultants who examined him.  He points to a form completed by the state agency doctors that stated "yes" to the question of whether or not Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms were substantiated by the objective medical evidence alone.  *Id*. at 90, 102, 116, 125.  Plaintiff argues that the ALJ did not consider these medical opinions on this issue.

4

The Commissioner disagrees and argues that the ALJ's findings that the Plaintiff's statement concerning the intensity, persistence, and limiting effect of his symptoms were not supported by the medical and other evidence is not reversible error, despite what the state medical consultants opined.  The Commissioner argues that the ALJ did consider the opinions of the state medical consultants and gave them great weight.  All of these doctors concluded that Plaintiff's impairments were not disabling.  *Id*. at 26, 95, 107, 118.[3]

It is the ALJ's responsibility to determine the RFC.  *Ripley*, 67 F.3d at 557.  "The ALJ must evaluate every medical opinion in the record and decide what weight to give each."  *Carson v. Berryhill*, 286 F. Supp. 3d 818, 831 (S.D. Tex. 2018); *see also* 20 C.F.R. § 404.1527(c).  The ALJ, as a factfinder "has the sole responsibility for weighing the evidence and may choose whichever physician's diagnoses is most supported by the record."  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

Plaintiff asserts that the ALJ should have parsed each "separate opinion" and explained what weight he gave to each finding or comment within the broader opinions.  He relies on SSR 96-5P, 1996 WL 374183, at *4, which states "[a]djudicators must remember, however, that medical source statements may actually compromise separate medical opinions regarding diverse physical and mental functions, such as walking, lifting, seeing, and remembering instructions, and that it may be necessary to decide whether to adopt or not adopt each one."

The yes/no question that Plaintiff relies so heavily upon does not constitute a distinct medical opinion that required separate analysis because it was not addressing an isolated medical issue.  The medical consultants' opinions, which the ALJ gave great weight, largely support a finding of no disability.  For example, state agency reviewing psychologist Dr. Williams noted

---

[3] The undersigned notes that findings of disability are not medical opinions, and such a determination is reserved solely for the Commissioner. *See* 20 C.F.R. § 404.1527(d).

no restrictions of activities of daily living, no difficulties maintaining social functioning, and no recurring episodes of decompensation. Admin. R. [9] at 89. Dr. Williams also wrote that Plaintiff was able to perform personal care, drive, shop for himself, visit his parents, prepare meals, and appeared capable of functioning in a work environment. *Id*. at 90.

State medical consultant Dr. Bell reviewed Plaintiff's medical records and wrote that Plaintiff did not have communicative or environmental limitations. *Id*. at 92. Dr. Bell also noted that Plaintiff was blind in his left eye, but his visual impairment did not meet or equal a listing. *Id*.

Plaintiff was determined not disabled by the agency, and his claim was then reconsidered. Plaintiff's medical records were reviewed by Dr. James, another state medical consultant, who noted that Plaintiff did not have new or worsening symptoms. *Id*. at 115. In his opinion, the previous denial was appropriate. *Id*. These records from the state medical consultants support a finding of no disability.

The ALJ did consider each opinion and assigned appropriate weight to each. *See id*. at 24.[4] Plaintiff has not demonstrated how the yes/no question regarding Plaintiff's symptoms constituted a distinct medical opinion about a specific disability. Requiring an ALJ to assign weight to every data point or comment in a claimant's medical records is far too formalistic. *See Falco v. Shalala*, 27 F. 3d 160, 163-164 (5th Cir. 1994) (holding that an ALJ was not required to follow formalistic rules or a rigid approach when she has already clearly articulated her findings.) The undersigned finds this issue to be without merit.

---

[4] The ALJ considered the medical opinions in detail. For example, the ALJ gave partial weight to the state physical consultants who opined that Plaintiff could perform slightly less than a full range of medium work. The ALJ found that this opinion was only entitled to partial weight because the Plaintiff suffered from more limitations than this opinion contemplated. Admin. R. [9] at 24. The ALJ found more restrictions than the state physical consultants, and this detailed analysis was actually favorable to Plaintiff.

6

*Did the ALJ properly consider Plaintiff's mental impairments?*

Plaintiff argues that he may have an intellectual disability or learning disability and the ALJ did not sufficiently consider this possibility. Plaintiff asserts that the ALJ should have consulted a medical examiner to determine whether such an intellectual disability would have further limited his work-related activities. Plaintiff points to the ALJ's Listings analysis where he considered Listing 12.04 (depressive, bipolar related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.08 (autism spectrum) but did not consider Listing 12.05 (intellectual disorders) to demonstrate that the ALJ did not incorporate an intellectual disability into any part of his analysis.[5]

"The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). It is, however, the claimant's burden to prove his disability by establishing a physical or mental impairment. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). The duty to obtain a consultative examination is triggered only if "the record establishes that such an examination is necessary to enable the [ALJ] to make the disability decision." *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (citation and quotations omitted). "The decision is discretionary and must be balanced against the fact that the claimant bears the burden of proof through step four of the evaluation process." *Blane v. Berryhill*, 2017 WL 4364413, at *2 (S.D. Miss. Sep. 29, 2017). The duty to seek consultative examinations does not arise when possible disabilities are not alleged by the claimant and are not clearly indicated on the record before the

---

[5] The Commissioner makes a lengthy argument as to why Plaintiff does not satisfy Listing 12.05. The undersigned agrees that Plaintiff has not affirmatively established that he satisfies the requirements of that Listing, but that does not appear to be the thrust of Plaintiff's argument. Rather, Plaintiff submits that the ALJ should have explored whether he has an intellectual disability and developed the record accordingly.

ALJ. *Hardman*, 820 F.3d at 147. "[I]solated comments about the claimant's low intelligence [are] insufficient to raise suspicion that the claimant [has] an intellectual disability." *Id*. (citing *Pierre v. Sullivan*, 884 F.2d 799, 802-803 (5th Cir. 1989)).

Plaintiff points to a comprehensive mental status exam performed by Dr. Jan Boggs on October 25, 2015. *Id*. at 439. Plaintiff was referred for the exam due to his depression. *Id*. Plaintiff reported that he had a learning disability, and Dr. Boggs noted that Plaintiff's communications skills suggested "low average to borderline learning disability." *Id*. at 440. Dr. Boggs also stated that Plaintiff "may not be functioning any higher than a borderline intellectual level." *Id*. at 441. Yet, Plaintiff also reported to Dr. Boggs that he was previously employed doing carpentry work, had a driver's license, drove a car, and enjoyed hunting and fishing. *Id*. at 439-441.

Plaintiff submits that Dr. Boggs comments along with a previous medical intake assessment that marked Plaintiff as having below average intelligence demonstrates that the ALJ should have considered an intellectual disability and should have consulted further with a medical expert. *Id*. at 408. While the record reflects that Plaintiff took special education classes, he never asserted that he had an intellectual disability or that such a mental impairment disabled him. Plaintiff appeared at a hearing before the ALJ and was represented by counsel. Admin. R. [9] at 35. At the hearing, Plaintiff testified that he suffered from migraines, had issues with his right knee and right shoulder, had issues with his memory, and was blind in the left eye. *Id*. at 40. He also testified that his "nerves" were his worst problem. *Id*.

Plaintiff never mentioned an intellectual disability or claimed at the hearing to be disabled due to an intellectual disability. He testified that he completed the 12th grade, but he was in special education classes and only received a certificate. *Id*. at 38, 42-43. Yet, he also

testified that he could read part of the newspaper and on "good days" he could count change. *Id.* at 43.

Plaintiff did not request further testing or examination regarding his mental capacity, did not claim to be intellectually disabled, and only argues it for the first time on appeal. "When there is no contention that a claimant is [intellectually disabled], a few instances in the record noting diminished intelligence do not require that the ALJ to order an I.Q. test in order to discharge his duty to fully and fairly develop the record." *Pierre*, 886 F.2d at 803. The ALJ was not required to further consult with medical experts regarding how an intellectual disability would impact Plaintiff's work-related activities, because Plaintiff did not assert a disabling intellectual deficit. This issue is without merit.

### *Did the ALJ properly incorporate Plaintiff's mental limitations into his hypothetical questioning of the vocational expert?*

In his opinion, the ALJ found that Plaintiff had moderate limitations regarding his ability to concentrate, persist, and maintain pace. Admin. R. [9] at 23. The ALJ made this finding when he considered if Plaintiff satisfied the "Paragraph B" requirements of the Listing analysis for mental impairments.[6] Plaintiff submits that this finding— that he was moderately limited in maintaining concentration, persistence, and pace— was not incorporated into the ALJ's RFC analysis and thus led to a deficient questioning of the vocational expert. The RFC stated that Plaintiff could "understand, remember, and carry out simple instructions and routine tasks" and

---

[6] The "Paragraph B" assessment outlines the criteria the ALJ considers to determine how a mental disorder limits a claimant's ability to function in a work setting. To satisfy the criteria, the mental limitation must result in an "extreme" limitation of one, or a "marked" limitation of two, of the four areas of mental functioning listed in Paragraph B. *See* 20 C.F.R., Part 404, Subpart P, App. 1.

could concentrate for two-hour periods. *Id*. It is Plaintiff's argument, however, that his "moderate limitation" means that he cannot concentrate for two-hour periods.

The Commissioner argues that a psychiatric review technique ("PRT") conducted at steps two and three of the sequential analysis to consider a claimant's mental limitations is not an RFC analysis, and the analyses do not need to mirror each other. The ALJ said as much in his opinion and noted that the "paragraph B" assessment is not an RFC analysis, and the RFC requires a more detailed assessment. *Id*. at 23; *see also* SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Additionally, the Commissioner submits that the ALJ did account for Plaintiff's moderate limitations, and the questioning of the vocational expert was not flawed.

"[E]very single limitation, such as difficulty in concentration, pace and/or persistence, need not be explicitly named in the [RFC], but rather need only be reasonably incorporated." *Ealy v. Colvin*, 2014 WL 3928193, at *2 (S.D. Miss. Aug. 12, 2014); *see also Jackson v. Berryhill*, 2018 WL 4655775, at *6 (S.D. Miss. July 10, 2018). The Fifth Circuit has held that an RFC limiting the claimant to one to two step instructions demonstrates that the ALJ appropriately incorporated the moderate limitations in concentration, persistence, and pace. *Bordelon v. Astrue*, 281 Fed. App'x 418, 423 (5th Cir. 2008).

The ALJ limited Plaintiff to simple instructions and routine tasks in the RFC. Admin. R. [9] at 23. The Fifth Circuit has held that this RFC limitation incorporates Plaintiff's moderate limitations. *Bordelon*, 281 Fed. App'x at 423 ("Such restrictions to rare public interactions, low stress, and simple, one-to two-step instructions reflect that the ALJ reasonably incorporated [Plaintiff's] moderate concentration, persistence, and pace limitations such that the hypothetical question was proper.") "The bulk of district courts in this circuit have followed *Bordelon* and held that a RFC limited to simple work reasonably incorporates a moderate, or in some cases

marked, limitation in concentration, persistence, and pace." *Jackson v. Astrue*, 2017 WL 3996437, at *5 (M.D. La. Aug. 2, 2017); *see also Harris v. Comm'r of Soc. Sec. Admin.*, 2018 WL 627559, at *10 (M.D. La. Jan. 30, 2018).  The ALJ was not required to specifically address every finding of the PRT in the RFC, as they are different examinations that serve different purposes.  As the RFC posed to the vocational expert was sufficient, this issue is without merit.

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends DENYING Plaintiff's Motion [10] for Summary Judgment, GRANTING the Commissioner's Motion [12] for Summary Judgment, and dismissing this action with prejudice.

## RIGHT TO OBJECT

In accordance with the rule and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge, and the opposing party. The district judge at the time may accept, reject, or modify in whole or in part, the recommendations of the magistrate judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 11th day of December, 2019

s/ Michael T. Parker
United States Magistrate Judge